FILED

2016 Oct-06  PM 04:33
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JONATHAN LANDHAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.** |
| **v.** ) | |
| ) | **2:16-cv-01223-MHH** |
| **THE BOARD OF TRUSTEES OF** ) | |
| **THE UNIVERSITY OF** ) | |
| **ALABAMA; RAY WATTS, M.D.,** ) | |
| **in his individual and official** ) | |
| **capacities; SELWYN VICKERS,** ) | |
| **M.D., in his individual and official** ) | |
| **capacities; HELEN HUGHES** ) | |
| **EVANS, M.D., in her individual** ) | |
| **and official capacities,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANT HELEN HUGHES EVANS'S M.D. MOTION TO DISMISS

## TABLE OF CONTENTS

I.    RELEVANT MATERIAL FACTS.................................................................1

II.   STANDARD OF REVIEW .........................................................................3

III.  ARGUMENT AND CITATION OF AUTHORITY ....................................6

   A.   The Official Capacity Claims Against Dr. Evans in Count I Are Duplicative of the Same Claim Against the Board and Dr.  Evans is Therefore Due to be Dismissed in Her Official Capacity........................6

   B.   The Law Does Not Allow for Individual Liability for the Claims in Count I and Dr. Evans is Therefore Due to be Dismissed in Her Individual Capacity...................................................................................................8

   C.   Dr. Evans in Her Official Capacity Has Eleventh Amendment Immunity for the Claims in Count II .................................................................8

   D.   The Type of Due Process Claim in Count II is Not Specified................11

      1.  Procedural Due Process ....................................................................12

      2.  Substantive Due Process ..................................................................13

   E.   Qualified Immunity Bars the Claims in Count II Against Dr. Evans in Her Individual Capacity ................................................................................15

      1.  Dr. Evans was acting in her discretionary authority...........................17

      2.  Dr. Evans did not violate a clearly established consitutional right.......19

   F.   Plaintiff Fails to State a Claim Upon Which Relief Can be Granted for the § 1985 Claim in Count II ..................................................................21

   G.   Even if Qualified Immunity Does Not Apply, the § 1985 Claim in Count II is Barred by the Intracorporate Conspiracy Doctrine...........................23

   H.   Dr. Evans in Her Official Capacity Has Sovereign Immunity for the Claims in  Counts III and IV .................................................................25

   I.   Count IV Fails to State a Claim Upon Which Relief Can be Granted.....25

CERTIFICATE OF SERVICE ................................................................................29

<u>**DEFENDANT HELEN HUGHES EVANS'S M.D. MOTION TO DISMISS**</u>

COMES NOW, Defendant Helen Hughes Evans, M.D., individually and in her official capacity ("Dr. Evans")[1] and pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) submits this Motion to Dismiss.  As grounds for this motion Dr. Evans submits as follows:

**I.    <u>RELEVANT MATERIAL FACTS</u>**

1.    Plaintiff is a former student of UAB School of Medicine. (Doc. No. 1-1, ¶9).  Plaintiff claims he was charged with non-academic misconduct after he failed to provide certain releases and complete certain requirements to return to school from a leave of absence in August 2014. (Doc. No. 1-1, ¶12).  Plaintiff alleges that an administrative hearing was held on September 17, 2014 before a three member Panel. (Doc. No. 1-1, ¶¶ 13, 17).  Plaintiff attended the hearing with his wife. (Doc. No. 1-1, ¶18).  The Panel recommended expulsion. (Doc. No. 1-1, ¶27).  Plaintiff was dismissed from the School of Medicine in September 2014. (Doc. No. 1-1, ¶29).  On appeal, the Dean upheld the Panel's decision. (Doc. No. 1-1, ¶¶30-31).

2.    After his dismissal, Plaintiff filed a lawsuit asserting federal and state law claims. Plaintiff originally filed his Complaint in Jefferson County Circuit Court on June 20, 2016. (Doc. No. 1-1).

---

[1] Additional Defendants The Board of Trustees of The University of Alabama, Ray Watts, M.D., and Selwyn Vickers, M.D., also have a pending motion to dismiss (Doc. No. 3).  Dr. Evans was not a party to that prior motion to dismiss because she had not been served at that time that motion was filed.  Dr. Evans was subsequently served and hereby submits her responsive pleading.

3.     On July 27, 2016, Defendants properly and timely removed this matter to this court pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441, and 1446. (Doc. No. 1).

4.     Plaintiff alleges violations of the following federal causes of action in his Complaint:

> (a) Count I - Title II of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12131, et seq.) and Section 504 of the Rehabilitation Act (29 U.S.C. § 794) (Doc. No. 1-1, pp.14-16, ¶¶48-63)[2]; and

> (b) Count II - Fourteenth Amendment Due Process pursuant to 42 U.S.C. § 1983 and conspiracy pursuant to 42 U.S.C. § 1985 (Doc. No. 1-1, pp.16-17, ¶¶64-81).

5.     Plaintiff alleges violations of the following common law causes of action in his Complaint:

> (a) Count III – Negligence and Wantonness (Doc. No. 1-1, pp.18-19, ¶¶82-92); and

> (b) Count IV – False Imprisonment and Outrage (Doc. No. 1-1, pp.19-20, ¶¶93-102).

6.     Counts I, III, and IV are brought against all Defendants. (Doc. No. 1-1,

---

[2]  For consistency, the pages of Plaintiff's Complaint cited herein refer to the CM/ECF pagination in the header of Doc. No. 1-1, not the pagination in the footer of Plaintiff's Complaint as originally filed in Circuit Court.

pp.14, 18-19).

7.     Count II is brought only against individual Defendants, including Dr. Evans. (Doc. No. 1-1, p.16).

## II.   <u>STANDARD OF REVIEW</u>

8.     Challenges to subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure can exist in two different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).  When presented with a facial attack on a complaint, a court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *Sinaltrainal*, 578 F.3d at 1260.  The court proceeds as if it were evaluating a Rule 12(b)(6) motion, views the complaint in the light most favorable to the plaintiff, and accepts any well-pled facts alleged in the complaint as true. *Id*.

9.     Factual attacks, however, question "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  When a court is confronted with a factual attack, the standard of review diverges.

> [T]he trial court may proceed as it never could under 12(b)(6) or FED.R.CIV.P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and

> the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).

10.    "When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion." *Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984).

11.    A Rule 12 (b)(6) motion tests the legal sufficiency of the complaint.  A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986).  Factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598 (1989).

12.    In order to survive a motion to dismiss a plaintiff must allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008).

13.    The U.S. Supreme Court has held that the factual allegations in a

plaintiff's complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.  It is insufficient to "merely create[] a suspicion [of] a legally cognizable right of action." *Id*.  As explained by the Eleventh Circuit Court of Appeals, "[t]he Supreme Court in *Twombly* rejected the notion that a 'wholly conclusory statement of claim [can] survive a motion to dismiss whenever the pleadings le[ave] open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery.'" *Weissman v. National Ass'n of Securities Dealers, Inc.*, 500 F.3d 1293, 1303 (11th Cir. 2007) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citation omitted). After *Twombly*, a plaintiff must plead allegations of fact which establish a plausible, not just possible, basis of recovery. *Twombly*, 127 S. Ct. at 1966.

14.    The Eleventh Circuit understands *Twombly* to be "a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." *Davis*, 516 F.3d at 974 n. 43 (11th Cir. 2008).  In the words of the Eleventh Circuit, "[t]he main Rule 8(a) standard now seems to be whether the 'allegations plausibly suggest[ ] ([and are] not merely consistent with)' a violation of the law." *Id*. (quoting *Twombly*, 127 S. Ct. at 1966).  Consequently, Plaintiff's Complaint in the case at bar must contain factual allegations that "plausibly suggest

(and are not merely consistent with) a violation of the law." *See id*. (brackets and internal quotation marks omitted); *see also Hindman v. Healy*, 278 Fed. App'x. 893, 894 (11th Cir. 2008).

15.     In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the U.S. Supreme Court buttressed its decision in *Twombly* and elaborated on the plausibility standard for dismissal of a complaint for failure to state a claim under Rule 12(b)(6).  The Court held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 127 S. Ct. 1955).

## III.     ARGUMENT AND CITATION OF AUTHORITY

### A.     THE OFFICIAL CAPACITY CLAIMS AGAINST DR. EVANS IN COUNT I ARE DUPLICATIVE OF THE SAME CLAIM AGAINST THE BOARD AND DR. EVANS IS THEREFORE DUE TO BE DISMISSED IN HER OFFICIAL CAPACITY

16.     In Count I, Plaintiff alleges the Board is liable for alleged discrimination. (Doc. No. 1-1, pp.14, 16).  Plaintiff also alleges in Count I that Dr. Evans in her official capacity discriminated against him in violation of the ADA and the Rehabilitation Act. (Doc. No. 1-1, pp.14, 16).

17.     However, Plaintiff's claims against Dr. Evans in her official capacity are due to be dismissed.

> "Official capacity suits are suits against state agencies, not against the people through whom agencies act.  The Supreme Court has said that official capacity suits represent 'only another way of pleading an action

> against an entity of which an officer is an agent,' and a victory against a named individual in an official capacity suit is 'a victory against the entity that employs him.' [*Kentucky v.*] *Graham*, [473 U.S. 159, 167–68 (1985)]. Thus, to impose *official* liability on a government entity amenable to suit, a plaintiff need do no more than name the government entity defendant; it is unnecessary also to name specific agents."

*Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993) (emphasis in original).

18.     Because Plaintiff has also named the Board in this case, any claim against Dr. Evans in her official capacity is duplicative of his claim against the Board. Thus, Plaintiff's claims in Count I against Dr. Evans in her official capacity are due to be dismissed. *Hobbs*, 999 F.2d at 1530; *see also, Pritchard v. Southern Co. Servs.*, 102 F.3d 1118, 1119 n.7 (11th Cir. 1996) (remedy for any discrimination plaintiff may have suffered because of disability lies against employer, not individual officers of employer); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam) (approving dismissal of official capacity defendants whose presence was merely redundant to naming the institutional defendant); *Simpson v. State*, No. 4:13-cv-01450-SGC, 2016 WL 820946, at *8 (N.D. Ala. Jan. 15, 2016) (when employer and official capacity defendants named for same clams, the claims against official capacity defendants are duplicative and due to be dismissed); *Clifton v. Ga. Merit Sys.*, 478 F. Supp. 2d 1356, 1362 (N.D. Ga. 2007) (dismissing official capacity claims under the ADA where the employer was a named defendant).

### B. THE LAW DOES NOT ALLOW FOR INDIVIDUAL LIABILITY FOR THE CLAIMS IN COUNT I AND DR. EVANS IS THEREFORE DUE TO BE DISMISSED IN HER INDIVIDUAL CAPACITY

19.    The Eleventh Circuit has held that "there is no individual capacity liability under Title II of the ADA or [Rehabilitation Act]." *Badillo v. Thorpe*, 158 Fed. App'x 208, 211 (11th Cir. 2005); *see also Berkery v. Kaplan*, 518 Fed. App'x. 813, 814–15 (11th Cir. 2013) (no individual liability under the Rehabilitation Act); *Tidwell v. Parr*, No. 1:11-cv-2612-KOB, 2013 WL 124282, at *10 (N.D. Ala. Jan. 3, 2013) ("Neither the ADA nor the Rehab Act recognize individual capacity liability.").

20.    Therefore, Plaintiff's ADA and Rehabilitation Act claims against Dr. Evans in her individual capacity are due to be dismissed. *Badillo*, 158 Fed. App'x at 211.

### C. DR. EVANS IN HER OFFICIAL CAPACITY HAS ELEVENTH AMENDMENT IMMUNITY FOR THE CLAIMS IN COUNT II

21.    In Count II of his Complaint, Plaintiff alleges "violations of due process under the Fourteenth Amendment and loss of property interest" pursuant to 42 U.S.C. § 1983. (Doc. No. 1-1, Count II caption heading at p.16; *and see* ¶¶69, 71, 75-76, 79, 81).

22.    Section 1983 does not abrogate a state's Eleventh Amendment immunity, and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71

(1989).

23.     "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (citations omitted); *see Price v. Univ. of Ala.*, 318 F. Supp. 2d 1084, 1088 (N.D. Ala. 2003) (Coogler, J.) (concluding that Witt, in his official capacity as President of UA, is immune from suit under the Eleventh Amendment).

24.     "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (stating that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

25.     "[A] suit by private parties seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347 (1974).

26.     Dr. Evans in her official capacity is, therefore, immune from suit for any § 1983 claims. *Graham*, 473 U.S. at 166; *Jordan*, 415 U.S. at 663; *Jackson*, 16 F.3d at 1575.

27.     This court lacks jurisdiction over Dr. Evans for any § 1983 claims and such claims fail to state a claim upon which relief can be granted. *Will*, 491 U.S. at

71; *Jackson*, 16 F.3d at 1575; Fed. R. Civ. P. 12(b)(1).

28.     In Count II, Plaintiff also vaguely asserts a claim of conspiracy pursuant

to 42 U.S.C. § 1985.  The only place Plaintiff's § 1985 claim is raised is by citation

to that section in the caption heading for Count II, and by a much generalized

statement in Paragraph 80 ("At least two of the individual Defendants acted in

concert to expel [Plaintiff] from the medical school"). (Doc. No. 1-1, Count II

caption heading at p.16; ¶80).

29.     Although not stated with particularity which subsection of § 1985 is

pled in his Complaint, § 1985(3) is the only portion of the statute which is plausibly

applicable in this case.  Section 1985(3) provides a cause of action for a conspiracy

to deprive "any person or class of persons of the equal protection of laws." 42 U.S.C.

§ 1985(3).

30.     The Eleventh Circuit has held "[w]e find no express congressional

abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C.

§ 1985 actions." *Fincher v. Florida Dep't of Labor & Employment Sec.*

*Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir. 1986), *cert.*

*denied*, 479 U.S. 1072, 107 S. Ct. 1262 (1987).

31.     Dr. Evans in her official capacity is immune under the Eleventh

Amendment from suit for any § 1985 claims. *Fincher*, 798 F.2d at 1372; *see also*,

*Wright v. Butts*, 953 F. Supp. 1352, 1359 (M.D. Ala. 1996) (individual defendants

sued in official capacity under § 1985(3) are immune from suit pursuant to the Eleventh Amendment).

32.     This court lacks jurisdiction over Dr. Evans for any § 1985(3) claims and such claims fail to state a claim upon which relief can be granted. *Fincher*, 798 F.2d at 1372; *Butts*, 953 F. Supp. at 1359; FED. R. CIV. P. 12(b)(1).

### D.     THE TYPE OF DUE PROCESS CLAIM IN COUNT II IS NOT SPECIFIED

33.     Plaintiff alleges "violations of due process under the Fourteenth Amendment", regarding the hearing he received and his dismissal from the School of Medicine. (Doc. No. 1-1, Count II caption heading at p.16; *and see* ¶¶65-66, 68—71, 75-76, 79, 81).

34.     The Fourteenth Amendment to the United States Constitution provides that no state may "deprive any person of life, liberty or property without due process of law." U.S. CONST. AMEND. XIV, § 1.

35.     In Count II, Plaintiff fails to properly and adequately state if he is making a procedural due process claim, substantive due process claim, or both. (Doc. No. 1-1, pp.16-17).

36.     From the allegations in Count II, Defendants <u>assume for sake of argument in this motion only</u> that Plaintiff asserts both procedural and substantive due process claims (Doc. No. 1-1, ¶¶68, 70-71, 74-76, 79, 81).

37.     Importantly, although Plaintiff was dismissed from the School of

11

Medicine for non-academic conduct, the reasons for dismissal were <u>not</u> disciplinary misconduct. (Doc. No. 1-1, ¶¶10-12, 27, 29).

### 1.   Procedural Due Process

38.   For Plaintiff's procedural due process claim, the legal standard governing academic, or non-disciplinary, dismissals was enunciated in the Supreme Court's decision *Board of Curators, University of Missouri v. Horowitz*, 435 U.S. 78, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978).   The court emphasized that such dismissals "were not easily adapted to traditional review, and that the standards governing academic dismissals were not as strict as those required in disciplinary actions.   Formal hearings are not required in academic dismissals.   Rather, the Supreme Court held that the decision-making process need only be 'careful and deliberate.' " *Haberle v. Univ. of Alabama in Birmingham*, 803, F.2d 1536, 1539 (11th Cir. 1986) (quoting *Horowitz*, 435 U.S. at 85–87).

39.   "Academic evaluations of a student, in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement." *Horowitz*, 435 U.S. at 89.   Simply put, in cases that do not involve discipline of the student, no hearing is required. *Id*. at 90.

40.   Because Plaintiff was not charged with disciplinary infractions nor dismissed for violation of disciplinary policies, no hearing was required.   Despite

this, the School of Medicine went above and beyond what was required and provided Plaintiff with a hearing and an appeal.  Plaintiff's complaint makes clear that there was not a procedural due process violation. *Horowitz*, 435 U.S. at 89-90.

41.     To the extent a procedural due process claim is asserted in Count II, it is due to be dismissed against Dr. Evans. *Horowitz*, 435 U.S. at 85–87.

### 2.     Substantive Due Process

42.     Substantive due process protects fundamental rights and liberty interests. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  To state a substantive due process claim,

> a plaintiff must allege the following two elements: (1) the existence of a protected property or liberty interest; and (2) "arbitrary and capricious conduct on the part of university officials by showing that there was no rational basis for the university's decision or that [the decision] was motivated by bad faith or ill will unrelated to academic performance." *Schuler v. University of Minnesota*, 788 F.2d 510, 515 (8th Cir. 1986); *see also Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 223 (1985); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–539 (1985); *Haberle v. University of Alabama in Birmingham*, 803 F.2d 1536, 1539 n. 1 & 1540 (11th Cir. 1986).

*Hamil v. Vertrees*, 2001 WL 135716, *7 (M.D. Ala. Jan. 10, 2001).

43.     Plaintiff's substantive due process claim fails because <u>he does not have a protected property interest</u>.  Both the United States Supreme Court and the Eleventh Circuit have concluded that no fundamental right to public education exists. *See Plyler v. Doe*, 457 U.S. 202, 221 (1982) (public elementary and secondary education is not a fundamental right protected by the Constitution); *San Antonio*

13

*Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973) (same); *C.B. v. Driscoll*, 82 F.3d 383, 389 (11th Cir. 1996) ("The right to attend a public school is a state-created, rather than a fundamental, right for the purposes of substantive due process."); *Craig v. Selma City School Bd.*, 801 F. Supp. 585, 595 (S.D. Ala. 1992) (The right to public education "is not explicitly granted to American citizens by the language of the federal constitution and has never been recognized as 'fundamental' by the Supreme Court.") (citing *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S. Ct. 578, 81 L. Ed. 703 (1937)).

44.     The Supreme Court in *Horowitz*, 435 U.S. at 84-85, and *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 222-23 (1985)—the two seminal cases on due process rights in the academic dismissal context—merely assumed, without deciding, the existence of a constitutionally protectable property right in continued enrollment at a state university.

45.     The Eleventh Circuit held in another case that "a property interest in continued enrollment in a state school is an important entitlement protected by the Due Process Clause of the Fourteenth Amendment." *Barnes v. Zaccari*, 669 F.3d 1295, 1305 (11th Cir. 2012) (citing *Goss v. Lopez*, 419 U.S. 565, 576 n. 8 (1975)).

46.     However, *Barnes*, *Goss*, and other cases holding there is a protectable property interest have involved dismissal or discipline for actual student <u>misconduct</u>. *Barnes*, 669 F.3d at 1305 (Barnes removed for misconduct); *Goss*, 419 U.S. at 570

(student suspended for disturbance in lunchroom and alleged damage to school property); *see also Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 151 (5th Cir. 1961) (students challenged expulsion for alleged misconduct).  In the instant case, Plaintiff was not dismissed from the School of Medicine for disciplinary misconduct. (Doc. No. 1-1, ¶¶12, 27, 29-30, 32).

47.     Because this case does not involve disciplinary student misconduct, Plaintiff's challenge for continued enrollment in the School of Medicine based on substantive due process is due to be dismissed. *Plyler*, 457 U.S. at 221; *Horowitz*, 435 U.S. at 84-85, *Ewing*, 474 U.S. 214, 222-23 (1985); *Driscoll*, 82 F.3d at 389.

### E.     QUALIFIED IMMUNITY BARS THE CLAIMS IN COUNT II AGAINST DR. EVANS HER INDIVIDUAL CAPACITY

48.     "Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

49.     "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.' " *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).  Qualified immunity is a defense not only from liability, but also

from suit, so courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible. *Gilmore,* 738 F.3d at 272.  Moreover, "qualified immunity seeks to protect government officials from the cost of trial and the burdens of broad reaching discovery." *Caraballo–Sandoval v. Honsted*, 35 F.3d 521, 524 (11th Cir. 1994) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S. Ct. 2727, 2737–38 (1982)); *see also Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1184 (11th Cir. 1994) (citing *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir. 1994) ( "... qualified immunity protects government officials performing discretionary functions from litigation, including discovery and trial")).

50.    Even allegations of animus by a state actor against a plaintiff are not sufficient to overcome the presumption of qualified immunity. *See Hansen v. Soldenwagner*, 19 F.3d 573, 578 (11th Cir. 1994) (stating that "[f]or qualified immunity purposes, the subjective motivation of the defendant official is immaterial").

51.    "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

52.    The Eleventh Circuit has "established a two-step analysis to be used in applying the *Harlow* test: the defendant government official must prove that 'he was

acting within the scope of his discretionary authority when the allegedly wrongful acts occurred,' and then the burden shifts to the plaintiff to demonstrate that the defendant 'violated clearly established constitutional law.'" *Sammons v. Taylor*, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)).

53.     In order to determine whether a law was clearly established, the right must be so specific that " 'in the light of pre-existing law the unlawfulness must be apparent.' " *Soldenwagner*, 19 F.3d at 575 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)).  Thus, the court in its analysis may not consider developments in the law, which occur after a defendant's alleged unlawful conduct.

54.     Furthermore, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that <u>what he is doing</u> violates that right." *Anderson*, 483 U.S. at 640 (emphasis added).  "The court must be convinced of the existence of a clear, factually-defined, well-recognized right of which a reasonable [government official] should have known." *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir. 1989).

### 1.     Dr. Evans was acting in her discretionary authority

55.     "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his

17

discretionary authority.  . . .  If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).

56.    For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when " 'his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.' " *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981)).

57.    The quantum and quality of evidence necessary to meet a defendant's burden "vary in proportion to the degree of discretion inherent in the defendant's office." *Barker*, 651 F.2d at 1125.  In this case, the very nature of Dr. Evans's job make it obvious that Dr. Evans acted within her wide-ranging discretionary authority as Senior Associate Dean for Medical Education of UAB's School of Medicine.

58.    Indeed, Plaintiff himself alleges that "at times relevant to this Complaint" Dr. Evans was "Senior Associate Dean for Medical Education" (Doc. No. 1-1, ¶7).

59.    Furthermore, none of Plaintiff's allegations regarding Count II expressly allege that Dr. Evans was acting in her individual capacity or outside her discretionary authority, (Doc. No. 1-1, ¶¶65-81).

### 2. Dr. Evans did not violate a clearly established constitutional right

60.     Accordingly, in the second step of the analysis, Plaintiff bears the burden to establish Dr. Evans's alleged conduct violated a <u>clearly established</u> constitutional right. *James*, 157 F.3d at 1281.

61.     Under this second step of the inquiry for qualified immunity, the court must determine whether the applicable law was clearly established at the time of the challenged action. *See Godby v. Montgomery Co. Bd. of Educ.*, 996 F. Supp. 1390, 1400 (M.D. Ala. 1998) (citing *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)). The relevant inquiry for the court is "fact specific," *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir. 1994), and Plaintiff must direct the court to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994).

62.     Plaintiff's Fourteenth Amendment due process claims are grounded in his alleged "constitutionally-protected property interest of receiving an education and obtaining a degree." (Doc. No. 1-1, ¶81).

63.     "However, neither the Supreme Court nor the Eleventh Circuit has clearly established that continued enrollment in a post-secondary education program is a property interest protected by the Fourteenth Amendment's guarantee of substantive due process." *Hamil*, 2001 WL 135716, *9. The court in *Hamil*

19

summarized why there is no protectable property interest, and consequently why

qualified immunity is appropriate for Dr. Evans:

> [T]he Supreme Court has twice been faced with the issue of whether a student at a state-supported university has a substantive due process property right in his or her post-secondary education. *See Ewing*, 474 U.S. at 222; *Horowitz*, 435 U.S. at 84-85 & 91. **On both occasions, the Court has declined to specifically decide the issue and assumed, for argument only, that such a right existed**. *Id*. Other circuits, including the Eleventh Circuit in *Haberle*, have followed the Supreme Court's lead. *See Haberle*, 803 F.2d at 1539 n. 1 (citing *Ewing* and stating that 'we assume a property interest, and do not decide the property issue now').
>
> **An assumption by the Supreme Court and the Eleventh Circuit that individuals have a protected property right in their continuing post-secondary education is not a holding**. An assumption is no more than dicta and, thus, cannot clearly establish the law for purposes of qualified immunity. *See Jones v. Cannon*, 174 F.3d 1271, 1288 n. 11 (11th Cir. 1999) (Neither Supreme Court nor Eleventh Circuit dicta can clearly establish the law for purposes of qualified immunity.); *see also Akins v. Board of Governors*, 840 F.2d 1371, 1376 (7th Cir.), *vacated on other grounds*, 488 U.S. 920 (1988) (In granting qualified immunity on the ground that no case from the Seventh Circuit had established a university student's substantive due process right to continued enrollment in the university's program, the Court stated that in *Ewing* the Supreme Court 'declined specifically to decide the matter.').
>
> Therefore, in the instant case, the court finds that Plaintiff has failed to satisfy the existence of a clearly established federal constitutional right. Because at the time of Plaintiff's alleged substantive due process deprivation, no binding decision had clearly established that the right to pursue a degree in post-secondary education constitutes a protected property interest, the court finds that the individual Defendants are entitled to qualified immunity. Accordingly, the individual Defendants are immune from liability for money damages on Plaintiff's § 1983 claims.

*Id*. (emphasis added); *see also Horowitz*, 435 U.S. at 84-85; *Ewing*, 474 U.S. at 222-

23; *Plyler*, 457 U.S. at 221; *Craig*, 801 F. Supp. at 595.

64.     Because Plaintiff has no clearly established right to an education in the School of Medicine or to be awarded a degree from UAB, Dr. Evans could not have violated any such right.  Dr. Evans is, therefore, entitled to qualified immunity for Plaintiff's § 1983 claims in Count II. *Harlow*, 457 U.S. at 818; *Sammons*, 967 F.2d at 1539; *Horowitz*, 435 U.S. at 84-85; *Ewing*, 474 U.S. at 222-23; *Plyler*, 457 U.S. at 221; *Craig*, 801 F. Supp. at 595.

### F.     PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR THE § 1985 CLAIM IN COUNT II

65.     Plaintiff's vague claim of conspiracy pursuant to 42 U.S.C. § 1985 is raised by citation to that section in the caption heading for Count II, and by a general statement in Paragraph 80 ("At least two of the individual Defendants acted in concert to expel [Plaintiff] from the medical school"). (Doc. No. 1-1, Count II caption heading at p.16; ¶80).

66.     To state a claim for relief under Section 1985(3), a plaintiff must allege sufficient facts reflecting:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Jimenez v. Wizel*, 644 Fed. App'x. 868, 874 (11th Cir. Feb. 17, 2016) (quoting

*Childree v. UAP/GA CHEM, Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996)).

67. "For purposes of the second element, the plaintiff must properly plead an allegation that 'some racial or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action.' " *Id*. (alterations omitted) (quoting *Childree*, 92 F.3d at 1147).

68. Plaintiff's Complaint fails to plead any facts or allegations to satisfy the second prong (and arguably the fourth prong too) of a prima facie case of conspiracy pursuant to § 1985(3). Plaintiff's allegations of a § 1985(3) violation fails to meet the pleading standards and completely fails to state a claim upon which relief can be granted. *Twombly*, 127 S. Ct. at 1965; *Davis*, 516 F.3d at 974. The Supreme Court in *Iqbal* held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 127 S. Ct. 1955). In this case, Plaintiff has not even made a "threadbare recital of the elements" of a § 1985(3) cause of action. (Doc. No. 1-1, ¶¶65-81).

69. The Eleventh Circuit has held that Section 1985(3) "protects two types of classes: (1) those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." *Farese v. Scherer*, 342 F.3d 1223, 1229 n. 7 (11th Cir. 2003) (internal quotations omitted) (quoting *Childree*, 92 F.3d at 1147).

70.     There are no allegations in the Complaint that Plaintiff is a member of a class protected under the equal protection clause, nor are there allegations that he is the member of a class of individuals of the type that Congress was trying to protect when it passed the law codified at Section 1985. (Doc. No. 1-1, ¶¶65-81).

71.     Furthermore, the conspiracy allegation in the Complaint in support of the § 1985(3) claim is a conclusory allegation wholly lacking a factual basis. *See Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985) ("In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint.").  Plaintiff does not allege any factual basis for the purported collusive behavior of Dr. Evans. (Doc. No. 1-1, ¶¶65-81).  Nor does Plaintiff allege, as is required, that "the conspirators were motivated by ... racial, or otherwise class-based, invidiously discriminatory intent." *Id*.

72.     Thus, Plaintiff's conspiracy claim fails to state a claim upon which relief can be granted. *Twombly*, 127 S. Ct. at 1965; *Kearson*, 763 F.2d at 407; FED. R. CIV. P. 12(b)(6).

### G.     EVEN IF QUALIFIED IMMUNITY DOES NOT APPLY, THE § 1985 CLAIM IN COUNT II IS BARRED BY THE INTRACORPORATE CONSPIRACY DOCTRINE

73.     Defendants assume for purposes of this motion only that Plaintiff contends Dr. Evans is one of "two of the individual Defendants [that] acted in concert to expel [Plaintiff] from the medical school."

23

74.     Plaintiffs' conspiracy claim fails under the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy.  Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir.2000) (en banc).

75.     The Eleventh Circuit has applied the doctrine to public entities and their employees as well. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir.2010) (citing *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)); *see also Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 768 (11th Cir.2000) (rejecting employee's § 1985(3) claim on that basis where employee alleged civil conspiracy among solely County employees); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir.1977), *aff'g*, 421 F. Supp. 12, 15 (E.D. La. 1976) (applying intracorporate conspiracy doctrine to shield the public university from § 1985(3) liability in a civil conspiracy claim).

76.     Here, the only conspirators even possibly identified by Plaintiff are Dr. Evans, Dr. Watts, and Dr. Vickers.  All are employed by the Board and alleged to be acting within their roles in the School of Medicine. (Doc. No. 1-1, ¶¶5-7).  No outsiders are alleged to be involved. (Doc. No. 1-1, ¶¶65-81).  The alleged subject

of their conspiracy—dismissing Plaintiff from the School of Medicine—relates to their performance of their official, not personal, duties.  Accordingly, because Dr. Evans was effectively acting on behalf of the Board in any decision making, or even when she entered into the alleged illicit agreement, there can be no claim against her under § 1985(3). *McAndrew*, 206 F.3d at 1036.

### H.   DR. EVANS IN HER OFFICIAL CAPACITY HAS SOVEREIGN IMMUNITY FOR THE CLAIMS IN COUNTS III AND IV

77.     Pursuant to Article I, § 14 of the Alabama Constitution, the state, state agencies and government employees in their official capacities may not be sued for money damages. *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989).

78.     State officers sued in their official capacities are " 'absolutely immune from suit when the action is, in effect, one against the state.' " *Williams v. John C. Calhoun Cmty. Coll.*, 646 So. 2d 1, 2 (Ala. 1994) (quoting *Phillips*, 555 So. 2d at 83). Moreover, "[t]he State cannot be sued indirectly by suing an officer in his or her official capacity. . . ." *Lyons v. River Road Const., Inc.*, 858 So. 2d 257, 261 (Ala. 2003).

79.     "It is settled beyond cavil that State officials cannot be sued for damages in their official capacities." *Ex parte Dangerfield*, 49 So. 3d 675, 681 (Ala. 2010) (citing *Burgoon v. Alabama State Dep't of Human Res.*, 835 So. 2d 131, 132–33 (Ala. 2002)).

80.     This court lacks jurisdiction over Dr. Evans for the official capacity

claims against her in Counts III and IV of Plaintiff's Complaint, and such claims fail to state a claim upon which relief can be granted. *Phillips*, 555 So. 2d at 83; *Williams*, 646 So. 2d at 2; ALA. CONST., Art. I, § 14; FED. R. CIV. P. 12(b)(1).[3]

## I.  COUNT IV FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

81.  Plaintiff alleges False Imprisonment and Outrage against all Defendants. (Doc. No. 1-1, ¶¶94-102).

82.  Section 6–5–170, ALA. CODE 1975, provides that "[f]alse imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."

83.  The entire substance of Plaintiff's False Imprisonment claim is that the Defendants allegedly ordered Plaintiff hospitalized for psychiatric care and such hospitalization was against his will. (Doc. No. 1-1, ¶¶94-96).

84.  Plaintiff failed to allege, and indeed cannot prove, that his psychiatric commitment was unlawful. (Doc. No. 1-1, ¶¶94-96).

85.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

---

[3] Counts III and IV are expressly alleged only against Dr. Evans in her official capacity. (Doc. No. 1-1, "Wherefore" paragraphs at pp.18-20). To the extent any claims in Counts III and IV are construed to apply to Dr. Evans in her individual capacities, any such individual capacity claims are barred by State-Agent immunity. *Ex parte Cranman*, 792 So. 2d, 392 (Ala. 2000). Dr. Evans therefore preserves the record and reserves the right to submit a fully developed motion to dismiss on this basis if necessary.

elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citation omitted). Accepting as true all sufficiently-pled factual allegations and viewing them in a light most favorable to the Plaintiff (*Hishon*, 467 U.S. at 73), Plaintiff's claim of false imprisonment (Doc. No. 1-1, p.19; ¶¶94-96) should be dismissed for failing to state a claim. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 127 S. Ct. at 1965-66.

86.     Count IV for False Imprisonment is, therefore, due to be dismissed with prejudice for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

87.     Plaintiff's allegation of Outrage is that "Defendants' conduct was extremely humiliating, outrageous, and vile." (Doc. No. 1-1, ¶99). Plaintiff fails to specify what precise alleged conduct was so outrageous, but Dr. Evans assumes it is the conduct in the five preceding enumerated Paragraphs of Count IV. (Doc. No. 1-1, ¶¶94-99).

88.     The four elements of the tort of intentional infliction of emotional distress, which is also known as the tort of outrage, are: " '(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) ... the distress was severe.' " *Gunter v. Huddle*, 724 So. 2d 544, 547 (Ala. Civ. App. 1998) (quoting *Harris v. McDavid*, 553 So. 2d 567, 569-70 (Ala. 1989)).

89.     Further, the Alabama Supreme Court has stated that the tort of outrage is "so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So. 2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133 (Ala. 1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989)." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000).

90.     Plaintiff's Complaint alleges no claims of wrongful burial, coercion of an insurance company, and no claims of sexual harassment. (Doc. No. 1-1, p.19). Under existing Alabama law Plaintiff has not pled any facts that would entitle him to relief for his allegation of intentional infliction of emotional distress (outrage). *Potts*, 771 at 465.

91.     Plaintiff's allegations regarding his claim of Outrage are conclusory, threadbare, and insufficient, and do not even state a claim that is plausible on its face.  Plaintiff's factual allegations will not suffice. *Twombly*, 127 S. Ct. at 1965-66.

92.     Count IV for Outrage is, therefore, due to be dismissed with prejudice for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

WHEREFORE, PREMISES CONSIDERED, as set forth herein, Dr. Evans requests dismissal of the following claims:

(a)     Count I claims against Defendant Dr. Evans in her official and
individual Capacity;

(b)     Count II claims against Defendant Dr. Evans in her official and
individual capacities;

(c)     Counts III and IV against Defendant Dr. Evans in her official capacity.

Respectfully submitted this 6th day of October, 2016.

s/ David R. Mellon                          s/ Audrey Y. Dupont
David R. Mellon (ASB-2493-L73D)             Audrey Y. Dupont (ASB-4766-R70D)
drmellon@uasystem.edu                       aydupont@uasystem.edu

The University of Alabama System
UAB Office of Counsel
1720 2nd Avenue South, Suite AB 820
Birmingham, AL 35294-0108
(205) 934-3474

Attorneys for Defendant Helen Hughes Evans, M.D.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed
with the Clerk of Court via the electronic filing system this 6th day of October, 2016,
which will electronically serve the following attorneys of record:

Jeffrey W. Bennitt                          Sonya C. Edwards
JEFFREY W. BENNITT &                        EDWARDS LAW, LLC
ASSOCIATES, LLC                             121 Edenton Street
121 Edenton Street                          Birmingham, AL 35242
Birmingham, AL 35242

s/ David R. Mellon
University Counsel